CHADELOID CHEMICAL CO. v. FRANK S. DE RONDE CO.

(Circuit Court, S. D. New York. August 1, 1906.)

PATENTS—VALIDITY AND INFRINGEMENT—PAINT REMOVER.

The Ellis patent, No. 714,880, for a composition for removing paint and varnish and the process of making the same, which consists in dissolving a wax in a hydrocarbon oil or other suitable solvent and the subsequent precipitation of the wax by the addition of an alcoholic body miscible with the solvent, the purpose being to thicken the composition and prevent the volatilizing of the solvent when applied, was not anticipated and discloses patentable invention; the remover described being more practicable and successful in use than any in the prior art. It is also infringed by a similar composition, in which acetone is substituted for alcohol, for which in such composition and for the purpose employed it is the chemical equivalent.

In Equity. On final hearing.

Duncan & Duncan, Frederick S. Duncan, and Harry L. Duncan, for complainant.

James L. Steuart and Steuart & Steuart, for defendant.

HAZEL, District Judge. This suit in equity for infringement of letters patent No. 714,880, dated December 2, 1902, issued to Carleton Ellis (assignor of complainant) for a composition and process for removing paint and varnish, comes here at final hearing and proofs. The bill contains the usual averments and asks an injunction and accounting. The specification describes fully the operation and function of the combined ingredients, as the following quotations will show:

"My new process consists in the dissolution of a wax or waxy body in a hydrocarbon oil or other suitable solvent and the subsequent precipitation of this wax in a gelatinous state by the addition of an alcoholic body miscible with the solvent employed. The solvent is, preferably, benzol or its homologues, toluol or xylol."

"A composition for removing coats of paint or varnish must contain an energetic softening or loosening agent. This, it is evident, is secured in my process by the combination of a penetrating hydrocarbon or analogous solvent with a softening agent, the alcoholic body. Such a mixture in itself would, however, be ineffectual, owing to its tendency to evaporate and to the difficulty in applying to vertical surfaces. These difficulties are overcome and the composition given the requisite consistency by the gelatinization process, as hereinbefore described."

As illustrative of the function of the alcoholic body the specification says:

"The alcoholic body or gelatinizing agent must be miscible with the solvent and in itself have at the most only a slight solvent action on waxes. Methyl, ethyl, butyl, amyl, allyl, and benzyl alcohol are included in the class of gelatinizers."

The patent describes a method of preparing the composition or product, and, for illustration, sets forth a formula, which reads:

"A suitable composition for general purposes can be obtained by the solution by heat of four parts each of paraffin and currier's hard grease in eight parts of benzol. This solution, while still warm, is gelatinized by the gradual addition of seven parts of methyl alcohol. The mixture should be rapidly stirred until cold."

Claims 1 to 6 relate to the process, and claims 6, 7, 8, and 9 to the composition. They read as follows:

"(1) The process herein described for producing a composition for removing paint and varnish, which consists in adding an alcoholic body to a solution of a suitable wax.

"(2) The process of producing a paint and varnish remover by the solution of a wax or waxy body in an aromatic hydrocarbon and the addition of an alcoholic body to induce gelatinization, substantially as described.

"(3) The process of thickening or gelatinizing a composition which softens dried paint or varnish by the precipitation of a dissolved wax by means of an aliphatic alcohol, substantially as described.

"(4) The process for producing a composition for removing paint and varnish by the dissolution of a wax or mixtures of waxes in benzol and the subsequent precipitation by an alcohol, substantially as set forth.

"(5) The process for producing a composition for removing paint and varnish by the solution of a wax or waxy body in benzol and the subsequent precipitation by methyl alcohol, substantially as described.

"(6) A composition for removing paint and varnish, consisting of a wax, a solvent for the wax, and an alcohol combined, substantially as described.

"(7) A composition for removing paint and varnish, consisting of a wax, an aromatic hydrocarbon as a solvent for the wax, and an alcohol combined, substantially as described.

"(8) A composition for removing paint and varnish, consisting of a wax dissolved in benzol or its immediate homologues, and gelatinized by the addition of an alcohol, substantially as described.

"(9) A composition for removing paint and varnish, consisting of four parts each of paraffin and currier's hard grease, eight parts benzol, and seven parts methyl alcohol, substantially as described."

The patentee asserts that benzol, which is a penetrant of the paint or varnish, induces a solution of the wax; the function of the latter being to prevent evaporation of the volatile ingredients upon exposure to the atmosphere, the alcoholic body acting as a precipitant and gelatinizer of the wax, the resultant of their use in the manner specified being a new product or article of manufacture. The ingredients of the wax solvent and alcoholic body, as, for example, benzol and methyl alcohol, are extremely volatile, and their utilization would not be successful if it were not for the means devised by the invention to prevent evaporation. This is done, complainant claims, by the wax, which is precipitated or separated from the benzol solution by the action of the alcohol, and forms on the surface of the remover a filmy pellicle of glassy appearance. Thus spreading and evaporation of the volatile liquids of the remover is prevented, and they are retained in contact with the paint and varnish to soften and dissolve the same. When the paint and varnish have become softened by the action of the chemicals, they may be removed from the wood by rubbing a cloth over the surface, which is left free and clean of the coatings.

The patentee was not the first to invent a compound for removing paint and varnish. Indeed, prior to the patent in suit, varnish removers had been used which included in their composition the ingredients benzol, alcohol, and fusel oil (the patent to Ball, No. 488,-416), and in the manufacture of paint removers by the Wadsworth-Howland Company, Arnstein, and Johnson benzol, alcohol, wax, and carbolic acid were compounded. The evidence abundantly establishes that the carbolic acid removers were impracticable and harmful, and

could not remove paint and varnish as efficiently as the composition in suit. It is conceded that they were injurious to the hands of the workmen engaged in applying the same, and roughened and discolored the grain of the wood. In addition to these defects, it was necessary in the prior art, after the application of the remover, to scrape the paint and varnish from the surface with a knife or other device. In this situation the patentee combined the chemical elements specified in the patent, and claims to have overcome the difficulties and inefficiencies of the antecedent art. To reduce his conception to practice he has departed from known compounds. In his method he neutralizes the solvent, giving the remover greater and more desirable consistency, by which evaporation is successfully retarded, and the harmful effects to the operator and the wood surface avoided. All these difficulties, though evidently troublesome, have been surmounted by the process of compounding known elements to produce a new result, namely, a gelatinous or colloidal condition of the wax immediately upon application of the remover, thus preventing evaporation of the volatile solvents, which evidently was an important obstacle to the practicability of prior removers.

The defenses are anticipation, noninvention, and principally noninfringement. No doubt exists in the mind of the court that the patent discloses invention, despite the fact that the chemical action and reaction of the materials were familiar to the art. In the patent to Ball for a paint and varnish remover the specification shows that four parts of benzol, three of fusel oil, and one of alcohol (the kind of alcohol not being mentioned) are compounded. This composition probably to a slight extent retarded evaporation, but the ingredients used were highly volatile and subject to the objection and difficulty of running off vertical surfaces and evaporating before the composition could efficiently soften the paint. That the Ellis remover, when applied to the wood, acts more efficiently and requires a less quantity to achieve the result than the remover of Ball is frankly admitted by the expert witnesses of the defendant. And it is fairly established by the evidence that the Ball compound, because of the difficulties stated, together with the noxious fumes arising from the fusel oil, was unsuccessful and impractical. Accordingly it cannot be held to anticipate the patent in suit. Westinghouse Elec. & Mfg. Co. v. Beacon Lamp Co. (C. C.) 95 Fed. 464; Bowers v. San Francisco Bridge Co. (C. C.) 91 Fed. 410; General Elec. Co. v. Wise (C. C.) 119 Fed. 926. The so-called alkaline and carbolic removers of the Wadsworth-Howland Company, Arnstein, and Johnson are subject to similar criticism and objection. But stress is laid upon the formulæ of such prior removers; it being pointed out that the wax contained therein operated in precisely the same way in relation to the precipitating and gelatinizing action as is described in the patent in suit. The consistency of the wax solution, however, when mixed with carbolic acid, is not thought to perform the function of the Ellis composition. Upon this point Dr. Boesch, witness for complainant, testified:

"The function of the carbolic acid in removers is to destroy the paint or varnish layer by chemical disintegration, producing a new product of a mixed

character. This effect is clearly observed in the interaction of carbolic acid and the waxes or resins, whereby the two substances after a very short contact seem to get converted into a magma, entirely losing the identity on the one hand of the wax or resin or other carbolic acid as such, forming entirely a new body."

This testimony finds corroboration in that of Dr. Ellis and in the commercial failures of the products as shown by the record. In these circumstances the substitution by the patentee of a practical wax solution, together with a gelatinizing agent for that familiarly known in the art and which had proven ineffectual, solved the problem. In determining the question of invention, as stated in Rumford Chemical Works v. N. Y. Baking Powder Co., 134 Fed. 385, 67 C. C. A. 367.

"Each case must depend upon its own facts, the inquiry always being whether what has been done required the exercise of the inventive faculties. Has a new or better result been obtained? Is it cheaper and more durable? Has it new capabilities? Does it perform new functions?"

An affirmative answer to these questions indirectly suggests another. To what extent, if at all, may the patentee invoke the doctrine of equivalents? There is little, if any, question regarding the primacy of the wax as a preventative of the evaporation of the volatile ingredients and the alcoholic body as a precipitant of the wax. In this respect a meritorious discovery has been made. That the product has commended itself to the public is also unquestioned. The expert witnesses for complainant and defendant are in dispute as to whether a chemical distinction exists between alcohols and ketone or acetone, an ingredient in defendant's composition. An analysis of the testimony on this point is not thought necessary, as the question of infringement depends upon whether such ingredient is the well-known chemical equivalent of alcohol.

As to infringement: An analysis of defendant's De Ronde remover No. 1 and the semipaste remover, so called, shows that benzol and similar hydrocarbons, acetone, and paraffin wax were compounded. The defendant contends that such composition or process did not produce a precipitation or separation of the wax, but that, when the product was applied to the painted or varnished surface, the waxy substance coming in contact therewith formed a glassy skum over the liquid, which prevented evaporation of the volatile solvents. It insists that no precipitation resulted from the chemical reaction and no gelatinization of the wax by the alcoholic body, and hence defendant has not infringed complainant's process and composition. The distinction is drawn that if the gelatinous condition of the wax results from the evaporation of the volatile solvents, and not from the chemical reaction by which precipitation is produced, there is no infringement by the defendant. As hereinbefore stated, the essentials of complainant's compound are a wax, a wax solvent, such as benzol, and an alcoholic body miscible with the solvent and which will act as a gelatinizer of the dissolved wax. The materials used by the defendant in compounding its product are practically similar to those of the composition in suit, and by their use the same product is created. It follows, therefore, that the products of defendant and

complainant are identical, even though they may not be created in exactly the same manner.

The proposition that the defendant's ingredient, acetone or ketone, was similar to complainant's alcoholic ingredient, was much discussed in the briefs submitted. Defendant admits that acetone in appearance is similar to alcohol, but that it possesses equivalent chemical properties is strenuously denied. It is unnecessary to elaborate upon the divergent views expressed by the expert witnesses on this point. That acetone in a paint and varnish remover is a recognized chemical equivalent of a variety of alcohols, including methyl or wood alcohol, is well established by the proofs. The authorities uniformly hold that the word "equivalent," as applied to a chemical action may mean a fluid which is "equally good" with that specified in the patent. Tyler v. Boston, 74 U. S. 327, 19 L. Ed. 93. After the patentee pointed out the process and indicated the ingredients which would create a definite chemical reaction of the compounded elements, it was not difficult for others familiar with the science of chemistry to find an equally good substitute for the essential element of complainant's product. I am satisfied by the evidence that defendant's remover was rendered potent and effective by the ingredient acetone, which is a recognized substitute for alcohol and connotes the same use.

It is suggested that, as the small quantity of wax in defendant's liquid remover freely dissolved, it could not have been precipitated by the action of the alcohol, but that in fact any perceivable precipitation was due merely to atmospheric exposure. The evidence indicates that 1 per cent. of wax in combination with the other ingredients specified in the patent is sufficient to produce gelatinization or incipient precipitation; the proportion of the wax being dependent upon the desired consistency of the remover. Such being the fact, the small quantity of wax used in the liquid remover of the defendant is immaterial. A strict construction of the patent in suit probably would not include defendant's composition and process; but, as the Ellis patent in suit possesses distinct properties by a combination of known ingredients not disclosed in the prior art, this contention is not maintainable. Considering the objections to prior varnish removers, as hereinbefore pointed out, the allowance of the broad claims by the Patent Office was justified. They must be liberally construed. To limit their scope to the specific proportions set out in the specification would not be a just recognition of the inventive faculties which I conceive to have been exercised in the production of the article in controversy.

Much testimony is found in the record in relation to the alleged anticipation by Eberson's benzol or naphtha remover of 1889 or 1900. The patentee practically admits in his testimony that the formulæ of Eberson correctly describe the claims in suit, except the ninth claim, which is for specific quantities and proportions. But he contends that Eberson has never produced a remover in accordance with such formulæ, and, further, that his commercial production was inoperative, impracticable, and in fact was abandoned. I am not satisfied by the evidence that a practicable remover capable of operation

and like the invention in suit was manufactured or sold by Eberson, as claimed by the defendant. The veracity of Eberson's claims have been challenged by the complainant with such well-directed energy and vigor that I am reluctant to accept as true the testimony offered in relation to prior use. Certainly the presumption of validity which accompanies the patent on its issuance should not be overthrown by testimony that is so susceptible of attack as to its credibility. Even though the testimony of Eberson is elaborately given and in some respects corroborated by credible facts and witnesses, nevertheless it is not thought sufficiently reliable or convincing to justify its consideration to anticipate the patent in suit. In short it does not belong to that high class of evidence which the law requires to invalidate a patent by antecedent use. Lalance & Grosjean Mfg. Co. v. Haberman Mfg. Co. (C. C.) 53 Fed. 375; The Barbed Wire Patent, 143 U. S. 275, 12 Sup. Ct. 443, 36 L. Ed. 154; Deering v. Winona Harvester Works, 155 U. S. 286, 15 Sup. Ct. 118, 39 L. Ed. 153.

My conclusion is that, in view of the foregoing and the evidence as a whole, claims 1 to 8, inclusive, were wrongfully appropriated by the defendant, and the paint and varnish remover of the complainant is infringed by the so-called De Ronde paint and varnish removers.

A decree for an injunction and accounting, with costs, may be entered.