CHADELOID CHEMICAL CO. v. WILSON REMOVER CO. et al,

(Circuit Court of Appeals, Second Circuit.  May 12, 1915.)

No. 232.

PATENTS ☞328—VALIDITY AND INFRINGEMENT—COMPOSITION FOR REMOVING PAINT AND VARNISH.

The Ellis patent, No. 714,880, claims 6, 7, and 8, for a composition for removing paint and varnish, *held* not anticipated, valid, and infringed.

Appeal from the District Court of the United States for the Southern District of New York.

On appeal from a decree of the District Court for the Southern District of New York holding valid and infringed claims 6, 7, and 8 of letters patent No. 714,880 granted December 2, 1902, to Carleton Ellis for a composition for removing paint and varnish.

The patent has been the subject of protracted litigation but it has been uniformly sustained not only by Judge Lacombe and Judge Learned Hand in the present suit ([D. C.] 220 Fed. 681), but also by Judge Hazel in the Southern District of New York in an action against the De Ronde Company ([C. C.] 146 Fed. 988). It was sustained by Judges Chatfield and Veeder in the Eastern District of New York in an action against the Daxe Varnish Company, by Judge Dodge in the District of Massachusetts in an action against the Billings Company, and by Judge Sanborn in the Northern District of Illinois in an action against the Thurston Company (220 Fed. 685). The decision by Judge Hand was rendered January 6, 1915.

Frederick P. Fish, T. D. Merwin, W. H. Swenarton, and J. Lewis Stackpole, all of New York City, for appellants.

Frederick S. Duncan, of New York City, and Victor Elting, of Chicago, Ill., for appellees.

Before COXE, WARD, and ROGERS, Circuit Judges.

COXE, Circuit Judge. Few patents have been subjected to so protracted, determined and ingenious attacks as the patent here in issue. Every argument that the able and resourceful lawyers who have represented the defendants could discover in opposition to the patent has been advanced, considered and overruled by an unbroken line of decisions sustaining the patent and holding its claims infringed. Judging from the prior opinions no argument against the validity of the patent has been overlooked or neglected. Every effort has been made to secure a construction of the claims which would permit an ingenious infringer to escape, but without success. We have, then, a case in which the patent has been held valid and infringed by seven judges, some of them particularly learned in patent law, and we should be very sure of our position before going counter to such a uniform array of authority. It is most improbable that these judges have been misled or that any meritorious defense has been overlooked or erroneously decided by them.

The Ellis patent is for a process and the product of that process. It contains nine claims. The first five are for the process, the remaining four claims being for the product. The claims here involved are

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the sixth, seventh and eighth—all for the product. The sixth claim sufficiently describes the paint remover. It is as follows:

"A composition for removing paint and varnish consisting of a wax, a solvent for the wax and an alcohol combined substantially as described."

This composition is produced by dissolving a wax or waxy body in a hydro-carbon oil and the subsequent precipitation of this wax, in a gelatinous state, by adding an alcoholic body capable of being mixed with the solvent which is preferably benzol or its homologues. Other bodies which are good solvents for waxes and miscible with alcoholic bodies are included in the process. The waxy body must dissolve readily in the solvent and must gelatinize on the addition of alcohol. The waxes employed are such as beeswax, carnauba wax and their equivalents.

There can be no question on this record that Ellis produced a new and highly efficient paint remover which rapidly grew in favor and superseded the prior crude and unsatisfactory methods. These methods were expensive, inefficient, slow and dangerous. When it became necessary to remove paint or varnish from buildings, furniture and the like, the process in vogue was to scrape the paint with a sharp tool, or glass, or sandpaper or burn it off with a torch. When several coats of paint had been applied and had hardened for years its removal was expensive and resulted in damage to the object being scraped or burned. Especially was this true of furniture, doors and mantels which had been elaborately carved, the use of glass or sharp tools frequently resulting in injury to the carving. Under the Ellis method his composition is applied and permitted to remain until the paint is softened, when it may be removed by rubbing it with a cloth.

The dangers of the torch method are avoided by Ellis and the use of his remover saves time and money and is superior in operation and result to anything which preceded it. These qualities were immediately recognized by the trade and it is stated in the complainant's brief that "at the present time there are upwards of 60 licensees including the most important manufacturers of painter's supplies in the country." Those who have persisted in infringement have been stopped by the courts and at the present time the recognition is general and practically unanimous. We deem it unnecessary to review the testimony and arguments relating to the removers of the prior art for the reason that they have been so thoroughly discussed in the former decisions that anything we might say would be a repetition of what has been so well said by the judges of the District Court.

The danger, expense and loss of time incident to the use of the torch and metal scrapers had for years been known and the necessity for a chemical remover had been recognized long prior to 1902. Many efforts had been made to produce a safe and efficient remover along these lines, but without success. One of the first of these attempts is found in the patent to Ball, No. 488,416, which is referred to in the opinion below and in several other opinions in the prior suits and yet no copy is found in the record, so far as we can discover, and we are unable to find that the patent was introduced in evidence. In the De Ronde suit Judge Hazel says:

"In the patent to Ball for a paint and varnish remover, the specification shows that four parts of benzol, three of fusel oil and one of alcohol (the kind of alcohol not being mentioned), are compounded. This composition probably to a slight extent retarded evaporation but the ingredients used were highly volatile and subject to the objection and difficulty of running off vertical surfaces and evaporating before the composition could efficiently soften the paint. That the Ellis remover when applied to the wood acts more efficiently and requires a less quantity to achieve the result than the remover of Ball is frankly admitted by the expert witnesses of the defendant. And it is fairly established by the evidence that the Ball compound because of the difficulties stated together with the noxious fumes arising from the fusel oil was unsuccessful and unpractical. Accordingly it cannot be held to anticipate the patent in suit." (C. C.) 146 Fed. 988, 990.

In the case at bar Judge Learned Hand said:

"Ball's remover contained no phenol, and relied for its solvent upon benzol; but it had no wax, and the solvent evaporated too quickly to be serviceable. * * * Ball's remover went upon the theory that benzol and fusel oil should act as the solvent; but he had no wax to hold them from evaporation." 220 Fed. 681.

Assuming that the Ball patent is properly in evidence and that it has been correctly interpreted by the District Courts, it is manifest that it offers no defense to the suit.

Neither do we think that the testimony of learned experts and chemists, who have made many experiments to prove that the paint remover of the patent which does the work and satisfies the trade is old and inefficient, can be relied on in the face of proof showing its widespread popularity and satisfactory results. Ellis was the first to produce such a remover. It is the hunter who actually brings down the game who is entitled to carry it home. The need of an efficient and harmless paint remover had been felt for many years by the trade. Efforts to supply it were many but unsuccessful. Caustic alkali removers were tried and failed; they got rid of the paint but injured the wood. Carbolic-fusel oil removers were tried, but the carbolic acid proved dangerous to the workmen and injured the new paint when applied to the wood. All of these matters were considered in the litigation in the District Court and they were held not to negative the invention of the non-corrosive harmless removers of the Ellis patent.

The Bennett and Arnstein removers were considered in the original case but were held not to defeat the invention of the Ellis patent and to belong to the same class as the other prior carbolic-fusel oil removers, where wax and similar substances were used as thickeners, and were not intended to retard evaporation. If the old removers were satisfactory and did the desired work why are they not used to-day? How can we account for this persistent effort, during ten years of litigation, to use the Ellis product, upon any other theory than that the prior removers were wholly insufficient? The necessity for a practical remover was felt and many experiments were tried, but no practical result was reached until the Ellis composition was produced.

The testimony in support of this proposition is clear and persuasive; it is not necessary to review it in detail further than to say that it comes from manufacturers and large dealers and is to the effect that the carbolic-acid fusel oil removers were ineffective, dangerous to

health, destructive to the wood, offensive in use and lamentable failures generally.

The Ellis composition solved a problem which, prior to 1902, had baffled the efforts of those who realized the dangers and shortcomings of the existing removers but were unable to remedy them. The solution was not the result of a mere guess but was due to persistent effort by Ellis, who is an educated chemist of standing and reputation, who studied the problem with care and reached a solution which has solved the problem successfully. This is done without injuring the wood operated upon or endangering the health of the workmen. No one before had achieved this result.

We see no ground for criticism of the patent per se. In fact we think the patentee and the officials of the Patent Office are to be commended for having issued a chemical patent where the description and claims cover less than a page. The patent is clear, concise and intelligible to laymen. The criticisms are not well founded. It was not necessary or wise to specify the exact proportion of wax, as this differs according to the work being done. Had the exact percentage been named, anyone could evade the patent by using more or less than the specified amount and thus could have secured all the advantages of the invention without the payment of a dollar.

There can be no doubt regarding infringement. The defendants use a wax varying in quantity from 3½ to 9 per cent., a solvent for the wax, benzol and an alcoholic body, each about 42 per cent.

The decree is affirmed.