## CHADELOID CHEMICAL CO. v. CHARLES McADAM CO.

(Circuit Court of Appeals, Second Circuit. April 7, 1924.)

### No. 339.

1. Patents ⬯211(3)—Licensee may attack scope of claims by resorting to prior art.

   Though licensee may not question validity of patent, he may attack scope of claims, and to that end may resort to prior art.

2. Patents ⬯328—No. 1,014,211, claims 7 and 8, for paint remover, held not infringed.

   Dosselman patent, No. 1,014,211, claims 7 and 8, for paint remover, composed of equal parts of benzol and acetone and 3½ per cent. of waxy material, held not infringed, on theory of equivalents, by use of alcohol in place of acetone, in view of prior art.

⬯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the Chadeloid Chemical Company against the Charles McAdam Company. From an interlocutory decree, restraining defendant from infringing plaintiff's patent, defendant appeals. Reversed.

Appeal from an interlocutory decree of the District Court for the Southern District of New York, dated November 2, 1923, holding, inter alia, that plaintiff is the owner of United States letters patent, 1,014,211, dated January 9, 1912, to Dosselman & Neyman (hereinafter called Dosselman), and that claims 7 and 8 of the patent are infringed by defendant, and restraining defendant from infringing these claims, and "in particular from selling at prices less than or upon terms different from the schedule of minimum prices and terms established by the provisions" of a certain license agreement.

The application for the Dosselman patent was filed on June 24, 1903. The application for the patent to Ellis, infra, was filed on February 10, 1902, and the patent issued on December 2, 1902. Thus it appears that the Dosselman application was filed a little less than seven months after the issuance of the Ellis patent. Both patents were for removing paint and varnish or surface finishes.

Claims 7 and 8 of the Dosselman patent read:

"7. A composition of matter for removing finish from surfaces, comprising about equal portions of benzol and acetone and about 3½ per cent. of waxy material.

"8. A composition of matter for removing finish from surfaces, comprising about equal parts of acetone and other neutral volatile solvent material combined with not more than about 3½ per cent. of waxy material."

Munn, Anderson & Munn and McDonnell & Lebett, all of New York City (T. Hart Anderson, of New York City, of counsel), for appellant.

Frederick S. Duncan, of New York City, and Victor Elting, of Chicago, Ill., for appellee.

Before ROGERS, HOUGH, and MAYER, Circuit Judges.

MAYER, Circuit Judge (after stating the facts as above). The record presents a rather curious situation. The complaint was in the usual form familiar in the ordinary patent infringement suit. Two patents were involved, but, at the opening of the trial, the controversy was narrowed to claims 7 and 8 of the Dosselman patent.

Plaintiff introduced in evidence a license agreement between plaintiff, as licensor, and Charles McAdam, as licensee, dated June 28, 1915. Under this agreement, the Dosselman patent was not specifically mentioned, but there was an all-gathering clause as to letters patent "now or hereafter owned by the licensor covering paint or varnish or other finish removers," under which the Dosselman patent could be included. The Dosselman rights had been duly assigned by mesne assignments to plaintiff, so that the patent was issued to plaintiff, which thus had been its owner since January 9, 1912. The license set up a minimum price list, and the license was granted, inter alia, on condition that the licensee would not sell under this price list. Plaintiff also introduced in evidence an assignment of this license, dated August 23, 1916, from McAdam to Charles McAdam Company, an Illinois corporation.

Defendant's answer alleged noninfringement and invalidity, but at the trial, without formally amending its answer, defendant offered proof which showed that the Illinois corporation had been dissolved, and that,

in May, 1921, this defendant, a Delaware corporation, had succeeded to all the rights and obligations of the Illinois corporation, including this license. Much of the case then revolved around the question as to whether defendant had violated the license agreement by selling its product under the minimum prices set forth in the license.

The court found this issue in favor of plaintiff, and, on the authority of Bement v. National Harrow Co., 186 U. S. 70, 22 Sup. Ct. 747, 46 L. Ed. 1058, held that the price-fixing feature of the license was valid, and further held, under Indiana Mfg. Co. v. J. I. Case Threshing Mach. Co., 154 Fed. 365, 83 C. C. A. 343, that suit for infringement is properly brought, where the terms of the license regulating prices to be made by the licensee on the first sales are disregarded.

We remark, in passing, that the decision in 154 Fed. 365, 83 C. C. A. 343 (1907), has now become debatable; but it is unnecessary in the present case to consider whether a suit for infringement is maintainable upon the ground there discussed. It is sufficient, on the facts here, to determine whether defendant has infringed claims 7 and 8 of the Dosselman patent by the sale of defendant's product known as "X-Cell-All."

This leads to an outline of the history of the Ellis patent. Ellis, in his specification, stated:

"My new process consists in the dissolution of a wax or waxy body in a hydrocarbon oil or other suitable solvent and the subsequent precipitation of this wax in a gelatinous state by the addition of an *alcoholic* body miscible with the solvent employed. * * * A suitable composition for general purposes can be obtained by the solution by heat of four parts each of paraffin and currier's hard grease in eight parts of benzol"—i. e., one-third a waxy substance.

Nine claims were allowed. Claim 1, typical of the broad claims reads:

"The process herein described for producing a composition for removing paint and varnish, which consists in adding an *alcoholic* body to a solution of a suitable wax."

Claim 9 was limited as follows:

"A composition for removing paint and varnish, consisting of four parts each of paraffin and currier's hard grease, eight parts benzol, and seven parts methyl *alcohol*, substantially as described."

Every claim referred to alcohol, while acetone was not mentioned. The courts promptly recognized that Ellis was a pioneer and accorded to his claims most liberal treatment.

In Chadeloid Chemical Co. v. De Ronde Co. (C. C.) 146 Fed. 988 (1906), claims 1 to 9, inclusive, were in issue. In that case defendant was manufacturing and selling a remover consisting of a mixture of benzol and similar hydrocarbons *acetone* and paraffin wax—the latter from 1 per cent. up. Then followed Chadeloid Chemical Co. v. Daxe Varnish Co. (C. C.) 180 Fed. 1004 (1910); Chadeloid Chemical Co. v. Wilson Remover Co. (D. C.) 220 Fed. 681 (1915), affirmed 224 Fed. 481, 140 C. C. A. 189 (1915); Chadeloid Chemical Co. v. F. W. Thurston Co. (D. C.) 220 Fed. 685 (1915).

In addition to the cases, supra, plaintiff sued Charles McAdam and Charles McAdam Company, of Illinois, in the United States District

Court for the Northern District of Illinois, Eastern Division, on the Ellis patent, before the license agreement was entered into. At that time, defendant's "X-Cell-All" was made of *acetone*, benzol, and wax. In that suit the Chadeloid Chemical Company asked for and obtained on June 28, 1915, a decree granting a motion for a preliminary injunction against both defendants. The license agreement in the case at bar was dated the same day—i. e., June 28, 1915—and, inter alia, licensed McAdam to manufacture, use, and sell removers under the Ellis patent.

When, therefore, McAdam took this license, he was free as against plaintiff to use acetone or alcohol, and much or little wax, and there can be no question that plaintiff, which on June 28, 1915, was the owner of the Dosselman patent, could not have succeeded in a suit against McAdam, or any assignee of his license, because of alleged infringements of claims 7 and 8 of the Dosselman patent, in using alcohol or acetone and a small amount of wax.

The decisions of the courts at the suit of plaintiff having confined Ellis neither to alcohol nor to a small amount of wax, it follows that plaintiff granted the license to McAdam with as much breadth as if acetone and a very small amount of wax had been written in so many words into the claims of the Ellis patent. In such circumstances, plaintiffs, during the life of the Ellis patent, would not have been heard to say that the Ellis claims were susceptible of a narrower construction; and, on a proper record, the interesting question might now arise, on the particular facts in this case, as to whether such estoppel survived the expiration of the Ellis patent on December 2, 1919.

Defendant, however, in the case at bar, employs (and has employed since the Ellis patent expired), in its "X-Cell-All," benzol, *alcohol* and wax, there being a relatively small amount of wax, to wit, 3 per cent. or 4 per cent. While the Ellis patent specifically mentions *alcohol, benzol,* and wax, such as now included in the defendant's "X-Cell-All," the Dosselman patent specifically claims a composition of *acetone,* benzol, and wax, such as the defendants De Ronde and Charles McAdam were employing when they were held to be infringers of Ellis in 1906.

[1] This brings us to the question as to how the claims of the Dosselman patent should be interpreted. It is the settled rule in this circuit that, while a licensee may not question the validity of the patent, he may attack the scope of the claims and to that end may resort to the prior art. This doctrine has been recently again stated by this court in Pressed Steel Car Co. v. Union Pac. R. Co., 270 Fed. 518, and Pressed Steel Car Co. v. Union Pac. R. Co., 297 Fed. 788, decided January 25, 1924.

[2] A literal reading of the Ellis patent shows that acetone was not mentioned; but, because of the high character of the Ellis invention, the courts permitted an equivalent of alcohol in the form of acetone. This beneficent principle of the patent law is based primarily upon an understanding of human conduct. Once a substantial forward step is taken, it is usually easy for skilled men to find equivalents, and the inventor would often be deprived of his reward, if his contribution could thus be avoided.

But, when the field narrows, it is equally important not to extend the patent monopoly by indirection. There was very little for Dosselman to do, and, if he were permitted to examine the validity of the patent, we might look at claim 1 of the Ellis patent, and then at Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U. S. 45, 43 Sup. Ct. 322, 67 L. Ed. 523, and Eibel Process Co. v. Remington-Martin Co., 234 Fed. 624, 148 C. C. A. 390. But, assuming invention by Dosselman, it will be noted that in his claims he never mentions alcohol, but confines himself to acetone.

Counsel for defendant in the course of the trial admitted "from the patent and practical standpoint that denatured alcohol or wood alcohol, as used by the defendant, is the equivalent of the acetone in claims 7 and 8 of the patent in suit." No witnesses were necessary to prove the fact, for when this case was tried that had long been established in adjudicated cases.

The question, however, is whether Dosselman was entitled to this equivalent. When Dosselman filed his application, in June, 1903, no case construing the Ellis patent had been decided. The De Ronde Case, sharply contested, was not decided until August 1, 1906. By naming acetone only, the fair inference is that Dosselman was differentiating from alcohol, as used in the Ellis patent, the specification and claims of which were publicly known nearly seven months prior to the time when Dosselman filed his application. The file wrapper was not offered in evidence, but it is an interesting fact that the Dosselman patent was not granted until January, 1912, about 8½ years after the date of application.

We note in this connection the decision of the Court of Appeals, District of Columbia, in Ex parte Dosselman & Neymann, 167 O. G. 983, 37 App. D. C. 211, and we quote therefrom only the following:

"Here, however, the only ketone disclosed in the application is acetone. This seems to have been the only substance appellants had in mind for serving the purpose for which it is used. They confined themselves to this until five years after the filing of their application, during which time the finish-removing art had been extensively developed, when they presented the present claims."

The significant feature is the assertion of the court as to the progress of the art and the fact that acetone "seems to have been the only substance" Dosselman "had in mind. * * *" We need not pause to endeavor to discover all the data concerning "ketones." The point is that, so far as the record before us discloses, alcohol was never mentioned by Dosselman.

We have not overlooked the phrase in the specification:

"By means of a composition of matter composed of the ingredients or *their equivalents above described.* * * * "

No such catch-all can write into the claims what is not there. Indeed, this phrase may well be construed as confined to the equivalents mentioned. Thus, in the specification, equivalents are mentioned for paraffin and for benzol, but never for acetone, and in the claims certain elements are described in comprehensive language, such as "waxy material" and "neutral volatile solvent material."

Acetone, however, whether in the specification or claims, is always acetone, and never alcohol or anything else—a strong indication that in June, 1903, Dosselman either did not realize the equivalency of alcohol, or feared that, if he used it, he might run afoul of the Ellis patent.

As we are of opinion that claims 7 and 8 of the Dosselman patent must be limited to acetone, we conclude that defendant, in using alcohol, has not infringed.

Decree reversed, with costs.