RUMFORD CHEMICAL WORKS v. NEW YORK BAKING POWDER CO. et al.

(Circuit Court of Appeals, Second Circuit. July 7, 1904.)

No. 172.

1. PATENTS—INVENTION—BAKING POWDER.

The Catlin patent, No. 474,811, for a baking powder in which the phosphoric acid element is in granular form essentially free from pulverulent material, instead of in a finely pulverized condition, as in prior compounds, discloses invention, it being shown that the change in form of such element enhances the keeping quality of the preparation, and prevents its loss of efficiency for use by exposure to the atmosphere. The patent also *held* valid as against the defenses of prior use and abandonment, and infringed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 125 Fed. 231.

This action was commenced in the Southern District of New York for the infringement of letters patent No. 474,811, granted to Charles A. Catlin, assignor to the Rumford Chemical Works, of Providence, R. I., May 17, 1892, for improvements in baking preparations. The Circuit Court (125 Fed. 231) dismissed the bill upon the authority of Glue Co. v. Upton, 97 U. S. 3, 24 L. Ed. 985.

Philip Mauro, for appellant.

Arthur von Briesen and Paul Bakewell, for appellees.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge. The patent in suit relates to that class of baking preparations in which the active acid agent is, in whole or in part, some form of phosphoric acid or acid phosphate. Broadly stated the invention consists of a baking preparation in which the phosphoric

acid element is, practically, in a granular condition free from pulverulent phosphatic material. The patentee asserts that this granular material possesses peculiar and distinctive properties and characteristics of great value and is a new product or article of manufacture.

The specification states that baking preparations prior to Catlin's discovery, though in other respects satisfactory, were liable to deteriorate when exposed to the atmosphere, compelling the employment of expensive means in packing to protect them. The aim of the manufacturer had theretofore been to produce the phosphatic element in the finest pulverulent condition possible. Catlin discovered that this condition was not only unnecessary but detrimental to the highest efficiency and that a baking powder having the phosphatic element in a granular condition augments leavening efficiency, prevents deterioration of the preparation and increases the slow evolution of the gas, with a consequent increase in baking efficiency. Acid phosphates, particularly when reduced to a fine powder, possess a highly deliquescent property, greedily absorb moisture and produce in any mixture, of which they form a considerable part, a sticky, clammy condition. When the acid element is packed separately, in the powdered condition, this absorption causes it to harden into a useless crystalline mass. All of these difficulties, the specification asserts, are remedied by using the acid phosphate in a uniformly granular condition, namely, a condition where the granules are approximately of such a size that they will pass through a No. 9 silk bolt, but not through a No. 16 silk bolt. The patentee does not, however, restrict himself to the method of sifting described or to the particular size of the granules. The claims are as follows:

"(1) A baking preparation containing phosphoric acid or its compounds in granular condition essentially free from pulverulent phosphatic material, substantially as described.

"(2) A baking preparation composed of a phosphoric-acid element in granular form essentially free from pulverulent phosphatic material, in admixture with a carbonate or bicarbonate, as set forth."

The invention, then, briefly stated consists in substituting granular for pulverulent phosphatic material in baking preparations. The defenses are lack of novelty and invention, abandonment, insufficient description, public use for more than two years and noninfringement. Of these the most important is the question of invention. The court below found this issue in favor of the defendants upon the authority of Glue Co. v. Upton, 97 U. S. 6, 24 L. Ed. 985, confining the discussion principally to the question whether or not the proof sustained the assertion of the specification that the patented preparation produces "a marked increase in baking efficiency." We are not disposed to disagree with the finding of the court below that this assertion has not been established by the proof. We are, however, of the opinion that there is another ground upon which patentability can be sustained, namely, the alteration and improvement in the properties of the material, incident to the change from fine powder to the granulated condition, by which its keeping qualities are enhanced. If this change prevents the preparation from deteriorating and keeps in a condition of high efficiency and continued usefulness that which would otherwise spoil

and become a useless mass, it would seem that enough has been shown to support the patent. A baking powder which, on being exposed to the atmosphere, acquires a sticky, clammy condition, certainly loses its baking efficiency. If it will not keep, it will not bake. If, then, the patentee has produced a preparation that will retain all its useful properties to the end without resort to expensive and inconvenient means of preservation, he has certainly made a discovery which entitles him to consideration.

There can be no doubt that one of the principal difficulties which the complainant encountered in its long experience in phosphatic baking powders was the liability of the preparation to deteriorate upon exposure to the atmosphere—it would not keep. Was Catlin the first to remedy this difficulty and did it require an exercise of the inventive faculty to accomplish it? It seems that he was the first to conceive the idea which culminated in success. The word "granular" appears over and over again in the prior art, but never in the sense in which Catlin employs it. There is no indication to the chemist that the granular, coarse or brittle powder mentioned in the prior patents, in combination with the other ingredients necessary in a baking powder, would produce the phenomena referred to. The effort of the prior art was to avoid coarse, gritty particles in the commercial preparation and reduce it to a fine impalpable dust. Dealers vied with each other in this endeavor and he secured the customer who could show the finest pulverization. Of course granular particles appeared in the general mass, but no one, before Catlin, had thought of sifting out and rejecting as useless the fine particles and utilizing only those granules which are practically uniform in size. The phosphoric acid element of the prior art was in a uniformly pulverulent condition; the same element in the patented product is in a uniformly granular condition. The former was essentially free from granular phosphatic material; the latter is essentially free from pulverulent phosphatic material. A percentage of coarse particles was found in the former and a percentage of fine particles is found in the latter, but the predominating characteristics are that the former was essentially fine and the latter essentially granular.

But it is urged that in chemistry the proposition is elementary that the reaction between materials deliquescent in character is facilitated or retarded as the particles are made smaller or larger. Not only was it known to chemists, but it was a matter of common knowledge as well, that deliquescent substances have a greater tendency to melt in a foggy, humid atmosphere than in a cold, dry, rarefied atmosphere, and only common business sense was required to reduce as much as possible the surface of such substances when exposed to a moist atmosphere. In other words, the likelihood of deliquescence is decreased in proportion as the exposed surface is lessened. To do this was not the work of the inventor, say the defendants, but of one having only a rudimentary knowledge of chemistry. The chief difficulty with this argument is its inapplicability to the facts shown in the record. Catlin was dealing, not with a well-known substance, like sugar or glue, the properties of which were familiar to all, but with a chemical substance only recently discovered. He had for his ultimate object not

an improved acid-phosphate but an improved baking powder, the acid being considered not alone but in relation to the other ingredients of the preparation. The acid element must be preserved, but so must the other elements in combination. The leavening efficiency if not improved at least must not be diminished. The tendency to cake and crystallize must be avoided. What was there in the prior art to inform the inventor that this complicated problem could be solved by getting rid of the fine powder, which was supposed to be indispensable to success, and using a powder in a uniformly granulated condition? To assert that the substitution was obvious is to impeach the ability of a number of learned chemists who were working for a solution of the difficulty and who never thought of Catlin's remedy. Indeed, they refused to believe in its efficacy even after it was fully explained to them. The necessity for the fine powder was everywhere recognized. To change or tamper with this supposed essential was looked upon as rank heresy by those best acquainted with the subject. Accordingly the search for a remedy had proceeded principally along the line of packing the preparation in air tight receptacles. Catlin's invention made the cheapest and most attractive packages available by changing the properties of the powder so that it was transformed from a preparation which spoiled when exposed to the atmosphere into a successful commercial article.

In determining the question of invention each case must depend upon its own facts, the inquiry always being whether what has been done required the exercise of the inventive faculties. Has a new or better result been obtained? Is it cheaper and more durable? Has it new capabilities? Does it perform new functions? These questions in the present controversy must, we think, be answered in the affirmative. Smith v. Vulcanite Co., 93 U. S. 486, 23 L. Ed. 952; Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177, and cases cited in King v. Anderson (C. C.) 90 Fed. 500.

The other defenses were overruled by the court below and, as we agree with the Circuit Judge in thinking that "infringement is plain and the various other defenses—anticipation, abandonment, and prior use—are not especially persuasive," but little need be added. The defendants' powder is known as "Lion Baking Powder." Assuming, as defendants contend, that it contains from 10 to 12 per cent. of phosphatic material, which will pass through a No. 16 silk bolt, and may be denominated pulverulent, nevertheless we think the phosphatic element is generally granular in condition and essentially free from pulverulent matter. It is sufficiently so to produce all the results claimed by the patent. There is no proof, however, that the defendant Gordon has infringed the patent and as to him the bill was properly dismissed. We incline to the opinion that the alleged prior use by Herreshoff is entitled to greater consideration than the other attempts in the same direction. It will not be necessary, therefore, to consider the others in detail. In several of them the testimony emanates from interested and ignorant witnesses. Mr. Herreshoff, on the contrary, is an educated gentleman with no apparent interest in the controversy. After leaving college he studied chemistry and became an assistant of Prof. Horsford, the president of the complainant. He

was employed by the complainant at various times and at one time was superintendent of its works. And yet, though we believe him to be entirely honest, we cannot credit his story that Catlin's invention was practiced at complainant's works in 1867 and 1868. At the time of giving his testimony he was 67 years of age and was testifying to the minute details of transactions occurring 34 years before. Human memory is incapable of such miraculous achievements. He says he secured the granular material by grinding and describes the mill, made by him, which was used for this purpose. It is doubtful if any mill ever constructed could reduce the material to a granular condition, retaining the uniform particles and blowing away the fine powder, but certainly the mill described by the witness could not accomplish such a result. Again, it is simply incredible that this invention could have been practiced in the complainant's works while under the direction of Prof. Horsford. The persons employed there, from the president down, were men of intelligence and, if what Herreshoff describes actually took place, they must have known it. Is it possible that a number of enterprising business men with such a treasure in their hands would have deliberately thrown it away? And yet when Catlin made his proposal years later it was met by these same men with the most discouraging skepticism. The inference is irresistible that what Herreshoff describes did not take place; he is mistaken. It is enough to say of this and all the so-called prior uses that they have not been proved beyond a reasonable doubt.

The invention was not abandoned. The testimony of which abandonment is predicated tends rather to prove that the uses referred to were experimental in character and were intended to test the invention thoroughly before offering it to the public.

The proposition that the invention is without utility is sufficiently answered by the fact that the defendants persistently use it, and by the further fact that the granular phosphate commands a much higher price in the market than the powdered phosphate.

It follows that the decree in so far as it relates to the defendant Gordon is affirmed, with costs. Hutter v. Stopper Co., 128 Fed. 283, 286, 62 C. C. A. 652. In other respects the decree is reversed, with costs, and the cause is remanded to the Circuit Court with instructions to enter a decree for the complainant in the usual form.