RUMFORD CHEMICAL WORKS v. HYGIENIC CHEMICAL CO.

(Circuit Court, D. New Jersey. December 7, 1906.)

1. JUDGMENT—PERSONS CONCLUDED—PRIVIES IN SUIT FOR INFRINGEMENT OF PATENT.

The rule that one not a party to a suit for the infringement of a patent may be bound as a privy by the judgment or decree therein applies only to cases where, by agreement, a joint defense is made or a principal defends his agent, or a licensor his licensee, or other like relation contractual or representative exists. One is not bound as a privy merely because he contributes to the defense, without having the right to control the proceedings or to appeal from the judgment or decree.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, §§ 1190–1194.

Operation and effect of decision in equitable suit for infringement of patent, see Westinghouse Electric & Mfg. Co. v. Stanley Instrument Co., 68 C. C. A. 541.]

2. EVIDENCE—TESTIMONY OF DECEASED WITNESS—MODE OF PROOF.

The testimony of a deceased witness given in another case cannot be shown in a subsequent suit merely by producing a witness who testifies to the correctness of the printed transcript of such testimony as contained in the record in the prior suit, and then putting into the record such parts of such printed testimony as counsel may deem material or important to his case.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, §§ 2419–2422.]

3. PATENTS—CONTRIBUTORY INFRINGEMENT.

A defendant cannot be charged with contributory infringement of a patent for a baking powder merely because of the sale to an infringing manufacturer of an article which constitutes an element in the patented product, but which is also a common article of commerce, used for other purposes, without convincing proof that the article sold was used in the manufacture of the infringing product, and that defendant sold it knowing, or having reasonable cause to know, that it was to be so used.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 402.

Contributory infringement of patent, see Edison Electric Light Co. v. Peninsular Light, Power & Heat Co., 43 C. C. A. 485.]

In Equity. On final hearing.

C. A. L. Massie (Philip Mauro, of counsel), for complainant.

Whitridge, Butler & Rice (Willard Parker Butler and John French, of counsel), for defendant.

CROSS, District Judge. The bill of complaint seeks to hold the defendant liable for contributory infringement of letters patent No. 474,811, for a baking powder, dated May 17, 1892, issued to one Charles A. Catlin, and duly assigned to the complainant. The validity of the patent has been established by the Circuit Court of Appeals for the Second Circuit. Rumford Chemical Works v. New York Baking Powder Company et al., 134 Fed. 385, 67 C. C. A. 367. It appears in the case that there are two corporations bearing the name of Hygienic Chemical Company; that one is a New York corporation, and the other, the defendant, a corporation of this state; that the New Jersey corporation is a manufacturing corporation chiefly, and the New York corporation its selling agent, although it also sells the prod-

uct of other manufacturers. A suit was begun in the year 1904 in the Circuit Court of the United States for the Southern District of New York against both of said corporations and others, charging infringement of the above-mentioned patent, and a preliminary injunction was issued against all of the defendants, except the Hygienic Chemical Company of New Jersey, as to which defendant the bill was dismissed without prejudice, for the reason that no evidence of a sale of the infringing article made by that corporation within the Southern district of New York appeared in the case. In the case at bar the defendant has introduced no testimony, and claims that the evidence offered by the complainant is insufficient to support the material allegations of the bill.

The complainant insists, in the first place, that this defendant is bound by the decree entered in Rumford Chemical Works v. New York Baking Powder Company et al., supra, for the reason that the defendant herein contributed financially to, and otherwise aided in, the defense of that suit, and that consequently it was a privy thereto and is bound thereby. It is true that Mr. Heller, who is the president of and interested as a stockholder in both of the Hygienic Chemical Companies, gave testimony in that suit; but how, for what purpose, in what character, or under what circumstances does not appear. There is no evidence whatever that he sought to control, had the power to control, or did in any wise control that litigation. The mere fact that he was president of the Hygienic Chemical Company of New Jersey, and a witness in the suit, certainly shows no control over the suit, or any such interest as would make the corporation of which he was president a privy thereto. As to proof of any financial contribution by the defendant herein to the expenses of the New York litigation in which complainant's patent was sustained, I find none that is convincing. The weight of the testimony is that such contribution as was made was made, not by the defendant, but by the Hygienic Chemical Company of New York. Certainly the defendant herein cannot be concluded as a privy to that suit, without satisfactory evidence appears of such facts as the law deems necessary to establish privity. For the purpose obviously of showing that the contribution to the defense of the primary suit alleged to have been made by the New York corporation was to all intents and purposes made by the defendant herein, evidence was adduced intending to show that the defendant and the Hygienic Chemical Company of New York were one and the same corporation, and were practically controlled by the witness Heller, already referred to, and a Mr. Hirsh. It appears that these two men were largely instrumental in the organization of both corporations, and at that time controlled substantially all of the stock thereof, and this situation might have been presumed to continue, had not Heller, while under examination as a witness for the complainant, testified that it was not a fact that he and Hirsh at the time of the examination owned practically all of the stock of the two corporations. Later, in reply to a question asking what proportion of the capital shares of the Hygienic Chemical Company of New Jersey the witness and Mr. Hirsh owned, the witness replied that he could not answer without examination, whereupon complainant's counsel requested the information for a later session, and the

defendant's counsel expressed a willingness to produce the facts at a subsequent hearing. The matter, however, seems to have been dropped, as nothing further in that connection appears in the case. As already stated, the testimony shows that the New York corporation is the selling agent for the New Jersey corporation, but it also shows that the latter corporation does not own or control a single share of the stock of the former. The fact that the witness Heller is president of both corporations has already been adverted to. These are all the facts tending to show that the corporations are identical. At the time of their organization they seem to have been controlled by two men, but that situation was subsequently changed as appears from the testimony of Heller above given; but to what extent or when is not made clear, through the failure of the complainants to prosecute the examination of the witness to a definite result. I think the testimony insufficient to show the oneness of the two corporations. There is no evidence of any agreement between the defendant herein and the defendants in the New York litigation (which established complainant's patent) as to a joint defense of the suit; nor does it appear that this defendant, or, indeed, the New York corporation, had the right to control the proceedings, assume any active part therein, cross-examine the witnesses, or appeal from the judgment. I have found no case which goes to the length of saying that one who merely contributes to the defense of a suit is bound as a privy by the result thereof. Such a contribution might well be made from charitable or other good and sufficient reasons. The rule invoked is only applicable to cases where by agreement a joint defense is made or a principal defends his agent, or a licensor his licensee, or other like relations contractual or representative exist. As said by Hawley, J., in Theller v. Hershey (C. C.) 89 Fed. 575:

"The law is well settled that parties and privies include all who are directly interested in the subject-matter, and who had the right to make defense, control the proceedings, examine and cross-examine witnesses, and appeal from the judgment."

To the same effect is the case of Miller et al. v. Liggett & Myers Tobacco Company (C. C.) 7 Fed. 91. In Penfield v. C. & A. Potts & Co., 126 Fed. 475, 61 C. C. A. 371, it appears that earlier suits which were set up as a bar, had been defended by an agreement between the parties, to which they had contributed equally, under a stipulation that the same counsel should be employed in all the suits and a common agent appointed to assist the counsel, and that the evidence, so far as relevant, should be used in all the cases—manifestly a totally different situation from the one now presented. The case of David Bradley Manufacturing Company v. Eagle Manufacturing Company, 57 Fed. 980, 6 C. C. A. 661, was especially relied upon by counsel of complainant upon the argument, but the facts disclosed in that case are also totally unlike anything disclosed by the evidence in this case. The suit was brought for an infringement of a patent against a firm that was a branch of the company that manufactured the infringing devices, which manufacturing company conducted the defense to the suit and raised the question of the validity of the patent. It was held under those circumstances that the decree for the complainant, establishing the validity of the patent, bound the company conducting the defense. An

admission appears in the case substantially showing that the company held to be estopped by the decree therein employed counsel, took charge of, and conducted the defense in the name of the defendant, paid the expenses thereof, and that this was done by the company the same as it would have been done for any agent, branch house, or customer engaged in selling its manufactures. In the case of Morss v. Knapp et al. (C. C.) 37 Fed. 351, the defendants were held estopped by a prior decree because it appeared that they were the real defendants in the earlier suit, and that the nominal defendant was their agent. See, also, Australian Knitting Company v. Gormly (C. C.) 138 Fed. 92. I am compelled to conclude that the defendant herein was not a privy to the litigation in the Southern district of New York, and was consequently not concluded thereby.

Nor do I find any evidence of infringement of the complainant's patent by the defendant. The only evidence offered upon that point worthy of review was the introduction under objection of the evidence of a deceased witness, one Clotworthy, who was examined in Rumford Chemical Works v. New York Baking Powder Company, supra. Assuming that the issues in the two cases are substantially the same, although the record was not offered and there is no evidence that they are, still the evidence would only be admissible in a subsequent suit between the same parties or their privies—a situation which we have found does not exist—but, waiving that and assuming that my conclusion in that respect is unwarranted, the testimony was not admissible in the form in which it was offered. The witness produced to prove the testimony of the deceased witness did not attempt to give all of his testimony, or all of his testimony upon any given point. He testified that the printed record in the New York case which he had read or examined was a correct transcript of what the deceased witness testified to in his presence, whereupon counsel for the complainant, without offering the record, if, indeed, it were admissible, or having the witness testify to its contents at length, gave notice that he could print as a part of the complainant's record herein the deposition referred to, or at least so much thereof as related to the point at issue; and in the record herein two or three pages of the testimony of the deceased witness taken from the printed record appear. I think the introduction of the testimony into the record in this manner was improper; and, as objection was made thereto, it should be stricken out. The witness should himself have testified into the record what the deceased witness swore to, or the substance thereof, and it should not have been left to counsel to pick out and introduce such portions only as he might deem relevant or important to his case. It is for the court to say whether the testimony, or any part of it, was relevant. Counsel has evidently incorporated in this record, as appears by the numbered questions and cross-questions, only fragmentary and disjointed selections from the testimony of the deceased witness. Furthermore, if we consider the bill rendered for the alleged infringing article, which appears by the Clotworthy testimony to have been sold to his company, the receipt therefor, and the testimony of Heller pertinent thereto, it is not certainly shown whether the sale was made by the New York or the New Jersey corporation. A prima facie case has not been made.

148 F.—55

Infringement must be proved, and cannot be based upon conjectural testimony.

The specific sale sought to be proven by the above testimony was of a barrel of acid phosphate, a constituent element in the manufacture of baking powder, and the claim is made that it was knowingly sold for the purpose of being used in the manufacture of baking powder, that it was designed and intended for that use solely, and that consequently the defendant by the sale became guilty of contributory infringement. Assuming that the article in question was sold by the defendant to Clotworthy or others, there is no evidence showing for what purpose it was sold or used, or that it was only useful when combined in the manner provided in the patent in suit. On the contrary, there is evidence that it was an article of commerce in general and common use for a number of specific purposes. It is true it could be combined and used as claimed in the patent, but it could likewise be used, and was sold and used for a variety of other purposes, and I find no evidence in the case to show that there was any agreement, knowledge, or understanding that any acid phosphate sold by the defendant was to be combined with other articles to infringe the complainant's patent. The complainant made Heller his own witness, and his testimony, corroborated by Wadman to some extent as to the variety of uses for which acid phosphate is manufactured, adapted, and sold, is uncontradicted. In order to establish contributory infringement, it should be convincingly shown that a granular acid phosphate manufactured by the defendant went into a baking powder, which infringed the patent in suit, and that the defendant manufactured and sold said phosphate knowing, or having reasonable cause to know, that it was to be used in an infringing baking powder. I find this doctrine supported by numerous cases. In Edison Electric Light Company et al. v. Peninsular Light, Power & Heat Co. et al. (C. C.) 95 Fed., at page 673, it is said:

"The doctrine of contributory infringement has never been applied to a case where the thing alleged to be contributed is one of general use, suitable to a great variety of other methods of use, and especially where there is no agreement or definite purpose that the thing sold shall be employed with other things so as to infringe a patent right. The cases which are cited (Thompson-Houston Electric Co. v. Kelsey Electric Ry. Specialty Co. [C. C.] 72 Fed. 1016; Heaton-Peninsular Button-Fastener Co. v. Eureka Specialty Co., 25 C. C. A. 267, 77 Fed. 297, 35 L. R. A. 728), do not support the position taken; for in those cases not only was the thing furnished peculiarly adapted to the infringing use, but the court found as matter of fact that there was a wrongful purpose on the part of the contributing defendant that the article supplied should be so used. These are the characteristics of a case for making one liable as a contributory infringer."

In Bullock Electric & Mfg. Co. v. Westinghouse Electric & Mfg. Co., 129 Fed. 105, 111, 63 C. C. A. 607, the principle is laid down as follows:

"The intent and purpose that the element made and sold shall be used in a way that shall infringe the combination in which it is an element constitutes the necessary concert of action between him who furnished the single part and he who actually does the injury by the assembling and using of all the parts in such a way as to be an infringement"—citing cases.

See, also, Thompson-Houston Electric Company v. Ohio Brass Co., 80 Fed. 712, 721, 26 C. C. A. 107; Standard Computing Scale Company v. Computing Scale Co., 126 Fed. 639, 61 C. C. A. 541; Snyder et al. v. Bunnell et al. (C. C.) 29 Fed. 47.

Upon the evidence adduced it would be, inequitable to hold the defendant guilty of contributory infringement. Taking into account all the competent evidence offered and giving to it full probative force and effect, it falls short, of making a prima facie case against the defendant. I reach this decision with less hesitation, for the reason that, if the defendant were seriously encroaching upon the complainant's rights, it would seem reasonable to suppose that some evidence of the fact might have been produced other than that of an alleged sale made in 1901, supported only by incompetent or inconclusive proof.

The bill will be dismissed, with costs.