## MORGAN CONST. CO. v. DONNER STEEL CO.

(District Court, W. D. New York. October 27, 1920.)

1. **Patents ☞328—863,841, for cooling bed for rolling mills, valid and infringed.**

 The George patent, No. 863,841, for an improved conveyor or cooling bed for use in rolling mills, while for a combination of old elements, *held* valid, as marking an advance in the art; also infringed.

2. **Patents ☞49—Infringement evidence of utility.**

 The utility of an invention, although it has not gone into general use, is established as against a defendant by his persistent infringement.

In Equity. Suit by the Morgan Construction Company against the Donner Steel Company. Decree for complainant.

George H. Kennedy, Jr., of Worcester, Mass., for plaintiff.
Winter & Brown, of Pittsburgh, Pa., for defendant.

HAZEL, District Judge. The bill alleges infringement by defendant of plaintiff's patent No. 863,841, issued to Jerome R. George August 20, 1907, relating to improvement in conveyors for metal rods used in rolling mills, and commonly called cooling beds. Its construction consists of frames or bars for supporting the hot metal rods as they are mechanically moved forward step by step, together with a series of lifting and carrying supports or frames for lifting the hot bars or rods over the surface of the supporting bars at intervals. The object of the inventor was to make the supporting and lifting bars of such shape and form that, when acting in combination, they would serve to hold the heated metal in contact and automatically straighten it while being moved step by step or by intermittent movements from one end of the cooling bed to the other. The specification states:

"In conveyors of this class as now used the upper surface of both lifting and supporting bars are straight and in horizontal planes, and the metal rods which are being conveyed sometimes come in contact with each other, which is likely to distort their shape. When the supporting bars have straight supporting surfaces, there is no means to correct any lateral bends which the heated rods may receive."

It also states that the inventor does not wish to confine himself to the curved form of the supporting surfaces of the lifting bars, as the desired result was achievable by other forms.

The patent has seven claims. Five are involved herein. The omitted claims are limited to a lifting bar with wave-shaped depressions. It will suffice to set out the broad and specific claims only:

"1. In a conveyor for metal rods, the combination of supporting bars having serrated upper edges, lifting bars normally entirely below said serrated upper edges of said supporting bars, and means for moving said lifting bars in a circle, whereby the upper surface of said lifting bars passes entirely above the serrated upper edges of the supporting bars."

"7. In a conveyor for metal rods the combination of fixed supporting bars provided with a series of notches arranged in sets transversely across the conveyor, with the sides of said notches in each set in the same plane, a series

of movable notched bars, and means for actuating said movable bars to lift a metal rod from one set of notches in said fixed bars and deposit it in another set of notches."

The defenses are lack of novelty and invention and noninfringement. The record shows that in making steel ingots, billets, bars, etc., of varying lengths, the heated metal as it emerges from the run-out of the mill is ordinarily cooled on a conveyor or cooling bed before it is handled. A large number of separate pieces of hot metal are usually placed on the cooling bed, arranged side by side and moved intermittently across it. It is desirable that the metal bars or billets should not in their heated condition come in contact with each other, as experience has shown that by contact they are often bent or distorted; and hence it is necessary that they should be moved on supporting surfaces, which help to prevent or correct any bends or curves in them. To accomplish this the supporting members of the device in suit are notched, and the notches aligned with corresponding wave-shaped depressions in the lifting member, so that the lowest part of the notches upon which the heated metal rests comes in the same plane with the depressions on the lifting member.

[1] The invention was not in any sense a generic one. The separate elements of the combination of the claims in suit were old and performed useful functions in prior cooling beds, but the inventor was the first to combine in a single apparatus the step by step arrangement present in the known straight-edged bar device and in old devices with serrated edges on bars on skids aligned for carrying the hot rods; the carrying being effected by a rocking or oscillating mechanism of the skids or bars. The assembling of the parts by the patentee not only involved notching the supporting and lifting frames, but necessitated aligning the notches in a certain way, so that they would come in exact relationship, so as to control the heated rods in their movements. The prior patents to Johnston, to McDonald and McKee for so-called shuffle bar conveyors, to Edwards, to Kellogg for gravity notched cooling beds, to Geer, the so-called Illinois and Republic and Austrian cooling beds, disclose types of known devices. Such structure the patentee designed to improve, since according to the specification the shuffle bar conveyors were open to the objection of bending the hot rods in their travel, while the rocking and gravity devices operated on a different principle.

In none are contained the combination of elements in suit; i. e., the edged supporting bar or frame, the serrated lifting bar or frame, positioned normally below the upper surface of the supporting bar and mechanically moved in a circle to cause the lifting bar to pass above the teeth of the supporting bar. By his new combination of old parts or elements separately shown in prior devices the patentee, I think, advanced the art a little, and by his invention produced a new and useful result, one operating upon a somewhat different idea from prior patents. It is the law that a combination of old elements is patentable, if they have been combined to operate in a new way or to accomplish a new and useful result. Not only does the combination of elements operate in a new way, but as heretofore stated they jointly

function to keep the hot rods straight in their travel, thus preventing their distortion, besides enabling easier handling and transference, advantages or benefits not obtained in prior devices.

The claims in issue are entitled to a fair interpretation and of a scope sufficiently liberal to afford protection to the actual thing invented. To restrict them to a particular form of depressions or notches in the lifting bar, or to read into the claims a wave-shaped depression or curves with the crest arranged in a particular manner, would not afford such protection.

The defendant company in its cooling bed, in fairness it must be said, without having any prior actual knowledge or information of complainant's patent in suit, adapted a similar combination at its plant, save that the serrations on the surface of the lifting support are of different shape. Defendant claims that a departure from the patent in suit resulted by its adaption; that a new use eventuated, in that the hot bars, after being lifted by the sides of the serrations, are allowed to slide or tumble to the bottom as they are carried over the edged surfaces of the stationary support. The tumbling or sliding action of the hot rods after the lifting began was due in the main, in my opinion, to lateral adjustment of the serrated bars and to the form of the serrations. Some additional benefits no doubt were attained in the way of rolling or tumbling action, but the changes in the serrations were changes of form only, and any improvements resulting therefrom were such as a skilled mechanic could make. Machine Co. v. Murphy, 97 U. S. 120, 24 L. Ed. 935; Cantrell v. Wallick, 117 U. S. 689, 6 Sup. Ct. 970, 29 L. Ed. 1017; Comptograph Co. v. Mechanical Accountant Co., 145 Fed. 331, 76 C. C. A. 205. Defendant's structure retained the substance of the invention in suit and it has all the advantages.

[2] It was contended that complainant's structure as described in the specification and claims is impracticable, its impracticability being inferable from the fact that only one cooling bed has actually been constructed, the construction being under the broad claim only; but the rule that the utility of the invention is established by the fact that defendants have persisted in infringing it is thought to apply. Rumford Chemical Works v. New York Baking Powder Co., 134 Fed. 385, 67 C. C. A. 367. Under our laws a patentee was not obliged to manufacture the apparatus described in the patent. Its nonuse does not deprive him of the protection of the patent laws. In view of the construction by complainant of other cooling beds, or their preference for another type of apparatus, nonuse of the patent in suit was not unreasonable. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 406, 28 Sup. Ct. 748, 52 L. Ed. 1122.

The plaintiff may have a decree holding the patent valid and the claims in controversy infringed by defendant.